# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANN OLIVARIUS and JOHN FRANCIS MCALLISTER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 08 C 463 ) |
| THARALDSON PROPERTY MANAGEMENT, INC., d/b/a FAIRFIELD INN BY MARRIOTT CHAMPAIGN, | ) ) Magistrate Judge Morton Denlow ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Ann Olivarius ("Olivarius") and John Francis McAllister ("McAllister") (collectively "Plaintiffs"), brought a four-count complaint against Defendant Tharaldson Property Management, Inc., d/b/a Fairfield Inn by Marriott Champaign ("Tharaldson" or "Defendant") and Marriott International, Inc.,[1] to recover from injuries suffered after Olivarius cut her foot in a hotel room managed and operated by Tharaldson. Plaintiffs moved for leave to amend their complaint to add a claim for spoliation of evidence against

---

[1] Plaintiffs originally brought two counts against Tharaldson and two counts against Marriott International Inc. ("Marriott"). Plaintiffs filed a motion for leave to file an amended complaint seeking to remove Marriott from the case and to add a claim for spoliation of evidence. Dkt. 45. The Court held an oral argument on February 18, 2010, at which time the Court allowed Plaintiffs to file an amended complaint eliminating Marriott from the case, but denied Plaintiffs' efforts to add a claim for spoliation of evidence. Dkt. 67. Therefore, two counts remain against Tharaldson: a claim by Olivarius for negligence and a claim by McAllister for loss of consortium.

1

Tharaldson, which was denied in open court on February 18, 2010. Dkt. 67. This opinion provides a more complete explanation for the Court's ruling denying the spoliation claim.

Defendant has also filed a motion for summary judgment contending it is not liable for Plaintiffs' injuries because it lacked notice of the allegedly dangerous condition in the hotel room and because Olivarius did not identify the object that caused her injury. Because the material facts of whether Defendant had notice, and whether Olivarius' injuries were caused by an object sufficiently described are genuinely in dispute, Defendant's motion for summary judgment is denied.

## I. BACKGROUND FACTS

The following facts are taken in the light most favorable to Plaintiffs, as required when considering a summary judgment motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). On January 20, 2006, Olivarius rented Room 116 at the Fairfield Inn in Champaign, Illinois. PR ¶¶ 1, 4.[2] Shortly after checking into the room, Olivarius walked barefoot toward the bathroom and stepped on an object underneath the carpet right in front of the bathroom door. Dx. B at 53. Olivarius felt a searing pain and her foot began to bleed. Dx. B at 53, 60. Olivarius looked at the area where she stepped and saw a hand-sized lump under the carpet. Dx. B at 56-57, 59. Olivarius noticed the carpet looked as if it had pulled

---

[2] Citations to the record are in the following form: Defendant's Statement of Material Facts to support its Motion for Summary Judgment is abbreviated "DS"; Plaintiff's LR 56.1 (b)(3)(B) Statement of Additional Material Facts is abbreviated "PR"; Plaintiff's and Defendant's Appendix of Exhibits are abbreviated as "Px./Dx. __"; Deposition of Christopher Wheeler is abbreviated "Dep. Wheeler;" Plaintiff's Motion for Leave to File Amended Complaint is abbreviated "Pl.'s Mot. Am."

away from the runner about one centimeter, and exposed the cement underneath. Dx. B 57-59. She also noticed the carpet felt wet where she stepped. Dx. B at 59.

Olivarius did not inspect the cut while it was bleeding, but washed it off in the bathroom. PR ¶ 8; Dx. B at 64-66. Olivarius called the front desk, reported the incident, and asked for a first aid kit. Dx. B at 67-68. After waiting, Olivarius called again and was told there was no kit available. Dx. B at 68-69. Olivarius checked out on January 21, 2006, and told the receptionist and a hotel manager of the injury she sustained on the object near the bathroom. Dx. B at 71, 73.

Defendant's General Manager Timothy Izard ("Izard") testified in a deposition that if there was a problem with the carpet in Room 116 prior to Plaintiff's check-in, the staff should have discovered it, and failure to discover a problem would mean that Tharaldson's cleaning and maintenance procedures "broke down." Dx. C at 63-64. Tharaldson's maintenance policy required rooms to be cleaned the day a guest departs, before the next guest checks in. PR ¶¶ 16-22; Dx. at C 13-14, 46-48, 63. Room 116 was occupied the night before Olivarius checked in. Px. 3 ¶ 1. Additionally, Izard testified the maintenance crew checked every room after housekeeping had been through to ensure the room was clean. Dx. C at 19-20. These procedures were apparently implemented entirely during the day shift, as second-shift employee Chris Wheeler testified that he was frequently the only employee on duty and that he never checked a room to see if it was clean before letting it to a guest. Dep. Wheeler at 14-17.

Huberta Rose ("Rose"), a housekeeper for Tharaldson, testified she remembers

learning that a woman stepped on something in Room 116 and bringing it to the attention of a fellow employee; however, she did not remember when this incident occurred. Px. 5 at 6-7, 14-16. Rose did recall that it was a male guest who reported the incident to her. *Id.* at 25, 30. Olivarius testified that she stayed at the hotel alone and has not presented evidence that she informed other hotel guests of her injury. Dx. B at 41-42.

Additionally, Plaintiffs present the deposition testimony of Alma Bellafiore, the breakfast services coordinator, who remembers the rooms on the first floor flooding. Px. 5 at 22. Brittanie Hollingsworth, a front desk employee who worked the day shift, said people had complained of wet carpeting in rooms multiple times. Px. 1 at 9, 39.

As a result of the cut on her foot, Olivarius subsequently developed an infection and cellulitis in her lower left leg, necessitating emergency care and hospitalization. Olivarius alleges she suffers permanent damage to her leg. Following the incident, Olivarius claims she sent four letters to Defendant to make it aware of the incident and her resulting injuries. PR ¶¶ 14. Those letters were dated March 16, 2006, May 15, 2006, September 15, 2006, and January 20, 2007. PR Ex. A. In the January 20 letter, Olivarius wrote she would contact legal counsel if she received no response from Tharaldson about the steps it was taking to prevent similar injuries to other guests. *Id.* at 7. Tharaldson denies receiving any of these letters.

On January 22, 2008, Plaintiffs filed a complaint advancing negligence and loss of consortium claims. The case is before this Court on diversity jurisdiction. 28 U.S.C. §

1332(a)(2). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). Plaintiffs allege that Tharaldson failed to warn Olivarius of a dangerous condition of which Tharaldson had actual or constructive notice. Plaintiffs also allege that Tharaldson: 1) failed to properly maintain and/or clean Room 116; 2) failed to respond to a request for medical assistance; and 3) failed to implement and/or enforce maintenance policies. As a result, Olivarius claims the injury caused by the dangerous condition led to an infection and cellulitis in her lower left leg. McAllister, Olivarius' husband, alleges loss of consortium.

During discovery, Plaintiffs sought relevant documents from Tharaldson, including daily cleaning reports, deep cleaning logs, employee names and contact information, employee schedules, and complaint reports. However, Izard testified that it was Tharaldson's practice to destroy daily cleaning logs monthly and to destroy deep cleaning logs, service logs, and complaint logs yearly. Tharaldson further responds that it provided all known contact information about the former housekeeping employees to Plaintiffs' counsel. Tharaldson also asserts that it has no record of Olivarius' injury complaint or the four letters she allegedly sent. Defendant claims it was first notified of the incident when Plaintiffs filed the present action on January 22, 2008.

## II. PLAINTIFFS' MOTION TO ADD A CLAIM FOR SPOLIAITON

Plaintiffs allege in their proposed amended complaint that Tharaldson knowingly destroyed or made unavailable evidence necessary for Plaintiffs to prove Tharaldson's negligence after Tharaldson knew of the alleged injury. Specifically, Plaintiffs allege that: 1) Tharaldson destroyed documents related to Plaintiffs' claims after Olivarius' injury but before the litigation began, including daily cleaning reports, deep cleaning logs, service logs, complaint logs, and employee work shift information; and 2) the housekeeping staff contact information was insufficient for Plaintiffs to track them all down, because most of the social security numbers in the employee records were invalid.

Generally, courts grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, amendment is appropriately denied if it would be futile. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740 (7th Cir. 2007). Amendment is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Thus, the Court must determine if Plaintiffs can state a claim for spoliation. As Plaintiffs' claims arise under Illinois law, the Court looks to Illinois substantive law on spoliation. *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938); *River East Plaza, LLC v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 720-21 (2007).

The Illinois Supreme Court has held spoliation of evidence is a tort that can be pled under existing negligence principles, not as a separate intentional tort. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70 (Ill. 1995). An action for negligent spoliation may be brought

concurrently with the underlying suit on which it is based. *Id.* at 272. To sufficiently plead a spoliation claim, Plaintiffs must allege the standard negligence elements: defendant owed a duty, the defendant breached that duty, and the defendant's breach proximately caused plaintiff's damages. *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004).

There is no general duty to preserve evidence. *Boyd*, 652 N.E.2d at 270. However a duty to preserve evidence is established when: 1) it arises by agreement, contract, statute, special circumstance, or voluntary undertaking (called the "relationship" prong), and 2) a reasonable person should have foreseen that certain evidence at issue was material to a potential civil action (called the "foreseeability" prong). *Dardeen*, 821 N.E.2d at 231. A plaintiff must satisfy *both* prongs of this test. *Id.*

As to the "relationship" prong, Plaintiffs do not attempt to plead that Tharaldson had a duty by agreement, contract, statute, or that it ever voluntarily undertook to preserve the evidence. Plaintiffs are left with the allegation that Tharaldson had a duty to preserve evidence under a "special circumstance." Plaintiffs argue that such a duty arose because Olivarius notified Defendant of her injury the morning after it occurred as well as via four letters sent March 15, 2006, May 15, 2006, September 15, 2006, and January 20, 2007.[3]

Plaintiffs' cite no case establishing that mere notice of an injury creates a duty to preserve records related to that injury. When a party voluntarily undertakes to preserve evidence, it has a duty to ensure the evidence is saved for trial. *Stoner v. Wal-Mart Stores,*

---

[3]Although Tharaldson denies receiving the report or the letters, the Court accepts Plaintiffs' version for the purpose of determining whether they can state a spoliation claim.

*Inc.*, 2008 WL 3876077, at *4 (C.D. Ill. 2008) (duty to preserve evidence where store employees knew of a video tape that captured the events surrounding the plaintiff's injury and employees took steps to preserve it). However, neither the fact that the defendant was alerted to an accident, nor the mere opportunity to exercise control over the evidence is sufficient to create a duty to preserve evidence. *Dardeen*, 821 N.E.2d at 232-33.

Furthermore, even requesting an adverse party or third party to preserve evidence is not always sufficient to create a duty to do so (although Plaintiffs have not alleged they actually did that here). *Id.* In *Anderson*, the court found no special circumstance imposing a duty to preserve evidence when a defendant sent a letter to a third party requesting preservation of the truck's hose that was allegedly the cause of the plaintiff's injury. *Anderson v. Mack Trucks, Inc.*, 793 N.E.2d 962, 969 (Ill. App. Ct. 2003). On the other hand, a duty may arise when a plaintiff sends a very specific and limited demand placing defendant on notice not to "alter, repair, destroy, or modify" allegedly injurious equipment before the plaintiff's counsel can inspect it. *Smith v. Shipping Utilities, Inc.*, 2005 WL 3133494, at *2-3 (S.D. Ill. 2005).

In this case, Plaintiffs allege that sending four letters regarding Olivarius' incident to Tharaldson created a duty to preserve evidence of the cleaning, service, and employee complaint logs. However, there is no allegation that there was any request to preserve the records; rather, they merely notified Tharaldson of Olivarius' injury and requested information about future steps Tharaldson would take to prevent others from being injured. Thus, Olivarius' letters to Tharaldson were insufficient to give rise to a duty to preserve

8

evidence.

As to Plaintiffs' inability to locate and contact some of Tharaldson's former employees, the Court previously ordered Tharaldson to produce the personnel files of individuals who might have knowledge of the alleged incident. Tharaldson represented to the Court that it has produced to Plaintiffs all relevant documentation in its possession. The fact that Tharaldson's records are incomplete or that some of Tharaldson's former employees cannot be located is, on its own, not a basis for a spoliation claim.

Because Plaintiffs cannot assert a viable claim for spoliation, Plaintiffs' motion for leave to add a claim for spoliation is denied.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A.     LEGAL STANDARD**

A court may grant summary judgment when the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

In deciding a motion for summary judgment, the court can only consider evidence that

would be admissible at trial under the Federal Rules of Evidence. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. *Id.*; *Spiegla v. Hall*, 371 F.3d 928, 935 (7th Cir. 2004).

**B.    THE CASE PRESENTS GENUINE ISSUES OF MATERIAL FACT**

To recover on a negligence claim under Illinois law, a plaintiff must establish: 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty; and 3) an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Tharaldson claims it is entitled to summary judgment for the following reasons: 1) Tharaldson owed Olivarius no duty of care because there is no evidence it had actual or constructive knowledge of the alleged dangerous condition; and 2) Plaintiffs offered insufficient evidence to establish causation.

As an initial matter, the Court must determine whether Tharaldson owed a duty of care to Plaintiff. Under Illinois tort law, the existence of a duty depends upon whether the defendant and plaintiff had such a relationship that the law required the defendant to act reasonably for the plaintiff's protection. *Marshall*, 856 N.E.2d at 1057. In Illinois a hotel owes the duty of care to its guests that possessors of land do to business invitees. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 721 N.E.2d 614, 624-25 (Ill. App. Ct. 1999). That is,

10

the hotel owes a duty to its guests to exercise ordinary care in maintaining the premises in a reasonably safe condition. *Id.*; *see also* Illinois Pattern Jury Instructions, Civil, No. 120.02. Relevant factors to the duty question include the reasonable foreseeability of injury, likelihood of injury, magnitude of burden of guarding against it, and consequences of placing that burden on the defendant. *Marshall*, 856 N.E.2d at 1057.

Tharaldson holds its rooms open for public use. Olivarius was a paying guest at the hotel, and thus Tharaldson's invitee. Tharaldson owed Olivarius a duty to keep her room in a reasonably safe condition. Furthermore, it is reasonably foreseeable and likely that hotel guests such as Olivarius could be injured by stepping barefoot on defective flooring. Therefore, Tharaldson clearly owed Olivarius a legal duty of care to keep the floor in Room 116 in a reasonably safe condition.

Tharaldson asserts that its duty to Olivarius rests on the fact-specific question of whether it had actual or constructive notice of the condition of the carpeting in Room 116 on the date in question. However, whether a duty of care exists is a question of law to be decided by the court. *Marshall*, 856 N.E.2d at 1053-54. Because the question is one of law, it cannot rest on a "fact-specific formulation," but rather whether a duty was generally owed. *Id.* at 1054. The other negligence elements - breach of duty and whether the breach proximately caused the plaintiff's injuries - are factual matters for the jury, provided genuine issues of fact exist. *Id.*

The Illinois Supreme Court has acknowledged that "the concept of duty in negligence cases is very involved, complex and indeed nebulous." *Marshall*, 856 N.E.2d at 1056

11

(internal citation omitted). Courts have a tendency to conflate the duty and breach elements. *Id.* at 1056, 1061. However, most courts applying Illinois law analyze a business owner's actual or constructive notice of a dangerous condition as a fact issue relevant to whether the defendant *breached* its duty of care. *See, e.g., Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) ("liability can be imposed when . . . the invitee establishes that the business had actual or constructive notice of the dangerous condition . . . ); *Britton v. Univ. of Chicago Hosp.*, 889 N.E.2d 706, 708 (Ill. App. Ct. 2008) (considered constructive notice as fact issue related to breach of duty); *Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001) (business owner breaches its duty to invitee when it had actual or constructive knowledge of dangerous condition and failed to correct it); *Maschhoff v. National Supermarkets, Inc.*, 595 N.E.2d 665, 669 (Ill. App. Ct. 1992) (actual or constructive notice goes to breach of duty); *Hayes v. Bailey*, 400 N.E.2d 544, 546 (Ill. App. Ct. 1980) (hotel owner's actual/constructive notice is a breach issue); *Pita v. Target Corp.*, 2009 WL 1507645, at *2 (N.D. Ill. 2009) (citing *Pavlik*); *Galarnyk v. Hostmark Mgmt., Inc.,* 2001 U.S. Dist. LEXIS 11060, at * 12 (N.D. Ill. July 31, 2001) ("to demonstrate [hotel owner] breached its duty to keep its premises in a reasonable safe condition, plaintiff has the burden of establishing that defendant had actual or constructive knowledge of the dangerous condition that caused plaintiff's injury").

Having determined that Tharaldson owed Olivarius a duty of reasonable care as a matter of law, the Court will now consider whether a genuine issue of fact exists regarding Tharaldson's breach of duty, i.e., whether there is evidence it had actual or constructive

knowledge of the defective condition of the carpet in Room 116.

### 1. Actual or Constructive Notice

Liability is imposed on a defendant who had actual or constructive notice of a dangerous condition that injured the plaintiff. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988); *Tomczak,* 735 N.E.2d at 667. To establish actual knowledge, the plaintiff must offer some evidence that the defendant was actually aware of the condition. *Id.* In this case, there is no real evidence that Tharaldson had actual notice of the defective condition of Room 116's carpeting. Dx. C at 60-61, 63. As discussed in Section II, *supra*, many of Tharaldson's potentially pertinent records were destroyed. Furthermore, no employees could specifically recall the condition of Room 116 on the date in question.

However, proof of actual knowledge is not required if constructive knowledge can be shown - that is, knowledge will be imputed to the defendant under certain circumstances. *Chapman v. Foggy*, 375 N.E.2d 865, 868 (Ill. App. Ct. 1978). Constructive notice of a dangerous condition can be established by two alternative theories: 1) the defect or condition existed for a sufficient amount of time that the defendant should have discovered it in the exercise of reasonable care, or 2) the dangerous condition was part of a pattern of conduct or a recurring incident. *Culli*, 862 F.2d at 123.

To establish constructive notice under the first theory, a plaintiff must provide some evidence demonstrating the length of time the condition existed. Courts have granted summary judgment when plaintiffs failed to do so. *See, e.g., Reid*, 545 F.3d at 482 (affirming summary judgment because plaintiff failed to prove a milkshake was on the floor for more

13

than ten minutes and the court held no reasonable person could conclude this was enough time to give constructive notice); *Pita v. Target Corp.*, 2009 U.S. Dist. LEXIS 45031 at *4-5 (granting defendant's summary judgment motion because presence of liquid on the floor for less than ten minutes was not enough for a jury to establish constructive notice).

Illinois has no bright-line rule laying out a required time frame. *Reid*, 545 F.3d at 483. The Seventh Circuit has held there is no flat rule in Illinois, and this is a fact issue for the jury to explore at trial. *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) (even ten-minute time frame may be enough to establish notice of a floor spill when path frequently traveled by employees). On the other hand, where a plaintiff offers no evidence to indicate a defect, or any evidence to indicate the defendant had actual or constructive knowledge, summary judgment is properly granted for the defendant. *Britton*, 889 N.E.2d at 708-09 (plaintiff injured by glass door but could not say how the injury occurred or how long the door had been defective). Unsupported speculation about the length of time the condition has existed is insufficient. *Reid*, 545 F.3d at 482.

In the present case, taking the facts in a light most favorable to Plaintiffs, the Court finds that a genuine issue of material fact exists as to whether Tharaldson had constructive notice of the defective condition. Olivarius presents evidence of Tharaldson's policy requiring guestrooms to be cleaned regularly after a guest checks out and inspected by maintenance workers before the next guest checks in. PR ¶ 16-22; Dx. C at 13-14. Izard testified that he or a member of his staff checked the rooms daily after they had been cleaned. Dx. C at 47-48. If the rooms were properly vacuumed and checked prior to a new guest

14

entering, then it is reasonable to conclude that staff should have noticed a problem with the carpet. Dx. C 13, 20, 63-64.

A genuine issue of material fact exists regarding whether hotel policy was followed on the day Olivarius visited. A guest occupied Room 116 the night before Olivarius checked in on January 20, 2006. According to hotel policy, housekeepers should have cleaned the room and staff should have checked the premises after that guest checked out, but before Olivarius checked in. Using reasonable care, a reasonable fact-finder could conclude that the staff should have noticed a hand-sized lump in the carpet and carpet pulled away from the threshold.

Although Olivarius offers no evidence as to the exact length of time the dangerous defect may have existed, the fact that the carpet had pulled away from the threshold and exposed the fastening strip and the cement underneath tends to show that the defect likely existed longer than the hours between the morning cleaning and Olivarius' check-in. If the jury accepts Olivarius' testimony, the fact that sharp objects were imbedded in the carpet could lead to the reasonable inference that the condition had been present for some time. Furthermore, no one but Tharaldson's staff had access to the room between the time it was cleaned to the time Olivarius checked in, rendering it impossible that a third party could have created the condition. Thus, a jury could find that Tharaldson had enough time to discover and correct the condition.

Regarding the second theory under which constructive notice may be shown, the Court finds there is also a genuine issue of material fact as to whether the defective flooring

was part of a pattern of conduct or recurring incident on the hotel's premises. Constructive notice may be satisfied when evidence shows the injury was caused by a regular and recurring dangerous condition which the defendant should have foreseen. *Dunlap v. Marshall Field & Co.*, 327 N.E.2d 16, 19 (Ill. App. Ct. 1975). For example, where a gas station had a regular pattern of spills in and around its gas tanks throughout the busy parts of the day, the Seventh Circuit found it unreasonable for the defendant to only sweep at night and not have an attendant inspecting the area during the day. *Culli*, 862 F.2d at 126-27. However, a record devoid of problems similar to the dangerous condition alleged precludes this method of constructive notice. *See Torres v. T.G.I. Friday's*, 2006 WL 3743132 at *4 (N.D. Ill. 2006); *Dunlap*, 327 N.E.2d at 19-20.

Tharaldson's employees knew of the frequent flooding that occurred on the first floor in 2006, and guests complained of wet carpeting in the rooms. A reasonable injury could determine that dangerous conditions may result from frequent flooding, including dangerous flooring conditions that could potentially injure barefoot patrons. Tharaldson had a duty to use reasonable care to ensure the flooring was not defective in places where guests were likely to walk without shoes.

Therefore, the Court finds there is a genuine issue of material fact as to whether Tharaldson failed to properly clean the rooms and check for defective flooring that could lead to a guest being injured on the premises.

    **2.    Causation**

To survive a motion for summary judgment in a negligence action, a plaintiff must

provide evidence showing the defendant's breach of duty proximately caused his injuries. *Kimbrough v. Jewel Co.*, 416 N.E.2d 328, 331 (Ill. App. Ct. 1981). Proximate cause can be established when there is reasonable certainty that the defendant's acts caused the plaintiff's injury. *Id.* It is not enough that the plaintiff sustained an injury. *Id.* at 332. Rather, the plaintiff must show that some condition, for which the defendant is responsible, caused the injury. *Id.*

In its motion, Tharaldson relies on two cases in which the plaintiffs offered no evidence as to what caused their injury. *Vance v. Lucky Stores, Inc.*, 480 N.E.2d 167, 170 (Ill. App. Ct. 1985); *Kimbrough*, 416 N.E.2d at 331. In *Kimbrough*, the plaintiff repeatedly stated that she did not know why she fell on the ramp which she was walking down and offered no evidence of a defect or object that may have caused her to fall. *Id.* at 331. Similarly, in *Vance*, neither the plaintiff nor any witness knew of or saw anything that would have caused the plaintiff to fall while shopping at a grocery store, and the appellate court affirmed the directed verdict in favor of the defendant. 480 N.E.2d at 170. In *Barker v. Eagle Food Ctrs, Inc.*, the court affirmed summary judgment where the plaintiff presented evidence that produce departments spray their produce, but failed to raise a genuine issue of material fact by producing no evidence that the defendant's floor was wet the day she fell. 634 N.E.2d 1276, 1279 (Ill. App. Ct. 1994). However, the situations in those cases are distinguishable from the case at bar.

On the other hand, when a plaintiff's own testimony details his contact with a defective condition that led him to fall, summary judgment is inappropriate. *Knight v.*

17

*Schneider Nat'l Carriers, Inc.*, 350 F. Supp. 2d 775, 785 (N.D. Ill. 2004). The exact identity of the condition need not be established. *Culli*, 862 F.2d at 125. For example, an affidavit offered by the plaintiff stating that an open bag of garden soil had spread across the sidewalk and created a layer of mud in the area where plaintiff fell was sufficient to withstand a motion for summary judgment. *Johnson v. Sears, Roebuck & Co.*, 542 N.E.2d 841, 843 (Ill. App. Ct. 1989). Similarly, when a plaintiff alleged she tripped on a cracked and uneven driveway, the appellate court reversed summary judgment for the defendant because the plaintiff presented some factual basis that would arguably entitle her to judgment in her favor. *Lapidus v. Union Oil Co. of Cal.*, 536 N.E.2d 898, 899, 901 (Ill. App. Ct. 1989).

Although Olivarius does not know the exact nature of the object she stepped on, she provided evidence to present a genuine issue of material fact as to a condition in the room proximately causing her injury. Tharaldson's claims that Olivarius did not look to see what she stepped on are directly contradicted by deposition testimony offered by Olivarius that she looked at the carpet where she had stepped. After putting her bare foot down within a couple inches of the bathroom threshold, Olivarius felt a searing pain in her foot and it began bleeding. Olivarius looked at where she had stepped and noticed a "hand-sized lump" in the carpet. Dx. B at 56, 57. She also recalled it felt wet and squishy, but also that something hard seared into her skin.

Because Olivarius' testimony constitutes evidence that a specific object in the carpeting pierced her foot, the Court finds a genuine question of material fact exists as to

whether the alleged dangerous condition proximately caused her injuries.

## IV. CONCLUSION

Olivarius claims she cut her foot on the floor in a hotel room managed and operated by Tharaldson. Tharaldson owed Plaintiffs a duty to exercise ordinary care in maintaining the room in a reasonably safe condition. Plaintiffs have brought forth sufficient evidence to survive summary judgment on the issues of whether Tharaldson breached its duty of care and proximately caused Plaintiffs' injuries.

For the reasons set forth in this opinion, the Court denies Tharaldson's motion for summary judgment.

**SO ORDERED THIS 10TH DAY OF MARCH, 2010.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| Michael W. Clancy | John F. Boyle |
| Wendell W. Clancy | Law Offices of Meachum & Starck |
| Clancy Law Offices | 225 West Washington Street , Suite 1400 |
| 7 South Second Ave. | Chicago, IL 60606 |
| St. Charles, IL 60174 | |
| | |
| Counsel for Plaintiffs | Counsel for Defendant |